# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
## No. 21-96V

|  |  |
|---|---|
| KATHRYN SITTON,<br><br>    Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>    Respondent. | Chief Special Master Corcoran<br><br><br>Filed: August 12, 2025 |

*Jeffrey S. Pop, Jeffrey S. Pop & Associates, Beverly Hills, CA, for Petitioner.*

*Katherine Carr Esposito, U.S. Department of Justice, Washington, DC, for Respondent.*

### FACT RULING ON ONSET[1]

On January 5, 2021, Kathryn Sitton filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"), alleging the Table claim of shoulder injury related to vaccine administration ("SIRVA") as a result of a Hepatitis B ("Hep B") vaccine received on February 14, 2020. Pet. at 1, ECF No. 1. The case was assigned to the Special Processing Unit of the Office of Special Masters (the "SPU").

For the reasons discussed below, I find it more likely than not that the onset of Petitioner's shoulder pain occurred within 48 hours of vaccination, as alleged.

---

[1] Because this Ruling contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Ruling will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2018).

### I.    Relevant Procedural History

Following Respondent's medical review, the parties attempted to informally resolve this case but were ultimately unsuccessful. ECF Nos. 35-38, 40-45. Respondent filed his Rule 4(c) Report in defense of this claim in December 2023, arguing (in relevant part) that Petitioner had not established Table-consistent onset. Respondent's Report at 10, ECF No. 46.

After a review of the record and Respondent's arguments, I issued an Order to Show Cause, outlining the critical issues related to Petitioner's ability to satisfy the Table's onset requirement, and affording her an opportunity to submit any additional evidence to remedy these deficiencies in the record. ECF No. 47. But I warned Petitioner that my ultimate onset analysis would start with the medical record documentation, supplemented by declarations or affidavits. *Id.* at 5.

In response, Petitioner submitted a supplemental affidavit, a copy of an email correspondence from her medical provider, some outstanding medical records/intake forms, and two additional witness affidavits, along with a Memorandum addressing my Order to Show Cause. ECF Nos. 48-49. Respondent filed a Response in August 2024, maintaining his previous arguments and thus requesting dismissal. ECF No. 51. Petitioner filed a Reply thereafter, as well as affidavits through March 2025 certifying the newly filed medical record/intake form evidence. ECF Nos. 52-54. The onset dispute is now ripe for consideration.

### II.    Authority

Pursuant to Vaccine Act Section 13(a)(1)(A), a petitioner must prove, by a preponderance of the evidence, the matters required in the petition by Vaccine Act Section 11(c)(1). "Medical records, in general, warrant consideration as trustworthy evidence. The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events." *Cucuras v. Sec'y of Health & Hum. Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993).

Accordingly, where medical records are clear, consistent, and complete, they should be afforded substantial weight. *Lowrie v. Sec'y of Health & Hum. Servs.*, No. 03-1585V, 2005 WL 6117475, at *20 (Fed. Cl. Spec. Mstr. Dec. 12, 2005). However, this rule does not always apply. In *Lowrie*, the special master wrote that "written records which

are, themselves, inconsistent, should be accorded less deference than those which are internally consistent." *Lowrie*, 2005 WL 6117475, at *19.

The United States Court of Federal Claims has recognized that "medical records may be incomplete or inaccurate." *Camery v. Sec'y of Health & Hum. Servs.*, 42 Fed. Cl. 381, 391 (1998). The Court later outlined four possible explanations for inconsistencies between contemporaneously created medical records and later testimony: (1) a person's failure to recount to the medical professional everything that happened during the relevant time period; (2) the medical professional's failure to document everything reported to her or him; (3) a person's faulty recollection of the events when presenting testimony; or (4) a person's purposeful recounting of symptoms that did not exist. *La Londe v. Sec'y of Health & Hum. Servs.*, 110 Fed. Cl. 184, 203-04 (2013), *aff'd*, 746 F.3d 1335 (Fed. Cir. 2014). The Court has also said that medical records may be outweighed by testimony that is given later in time that is "consistent, clear, cogent, and compelling." *Camery*, 42 Fed. Cl. at 391 (citing *Blutstein v. Sec'y of Health & Hum. Servs.*, No. 90-2808, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998)).

A special master may find that the first symptom or manifestation of onset of an injury occurred "within the time period described in the Vaccine Injury Table even though the occurrence of such symptom or manifestation was not recorded or was incorrectly recorded as having occurred outside such period." Section 13(b)(2). "Such a finding may be made only upon demonstration by a preponderance of the evidence that the onset [of the injury] . . . did in fact occur within the time period described in the Vaccine Injury Table." *Id*.

The special master is obligated to fully consider and compare the medical records, testimony, and all other "relevant and reliable evidence contained in the record." *La Londe*, 110 Fed. Cl. at 204 (citing § 12(d)(3); Vaccine Rule 8); *see also Burns v. Sec'y of Health & Hum. Servs.*, 3 F.3d 415, 417 (Fed. Cir. 1993) (holding that it is within the special master's discretion to determine whether to afford greater weight to medical records or to other evidence, such as oral testimony surrounding the events in question that was given at a later date, provided that such determination is rational).

## III.    Relevant Factual Evidence

I make this finding after a complete review of the record, including all medical records, affidavits, and additional evidence filed:[3]

---

[3] While I have reviewed all the evidence filed to-date in this case, only evidence related to onset will be discussed herein, though other facts may be provided as necessary.

Petitioner received the Hep B vaccine alleged as causal on February 14, 2020, while at a visit with her primary care provider ("PCP"). Ex. 3 at 1; Ex. 2 at 1.

In her first affidavit, Petitioner attests that "[s]hortly following the vaccination, [she] developed right shoulder pain." Ex. 1 ¶ 5. In her second affidavit, Petitioner clarifies that "[w]ithin twenty-four hours after the [Hep B] shot, [she] developed right shoulder pain." Ex. 33 ¶ 7. Petitioner further states, in her third affidavit, that her "upper right shoulder was immediately sore right after receiving the vaccine." Ex. 46 ¶ 6. Petitioner adds that her pain persisted, "especially at night" and with sleeping. *Id.* ¶ 7. More specifically, and in her affidavit drafted in response to my Order to Show Cause, Petitioner attests that on the night of February 14th, her "right shoulder was sore to the point that [she] could not sleep on that side." Ex. 49 ¶ 5. She remembers this because her "TV is on the side of [her] bed where [she] sleep[s] on [her] right side to watch TV in bed." *Id.* She states that she "assumed that was normal and it would go away on its own." Ex. 46 ¶ 6; Ex. 49 ¶ 4.

Two weeks post-vaccination, on February 28, 2020, Petitioner went to her podiatrist complaining of a painful lesion between her right toes. Ex. 12 at 3. A musculoskeletal review of systems (from Petitioner) was void of muscle stiffness, weakness, deformities, muscle cramps, and shoulder complaints. *Id.* at 3-4. An examination showed equal and symmetric muscle strength and range of motion ("ROM") in the bilateral upper extremities. *Id.* at 4.

On March 16, 2020 (now 31 days post vaccination), Petitioner saw her chiropractor. Ex. 5 at 5. The records for this visit are handwritten and difficult to decipher but appear to reflect an encircled "R," followed by an illegible notation and then "to hand." *Id.* The phrase "flare-up" also appears to be contained in the notes, and that Petitioner was "pounding signs into [the] ground" and that the issue was "better post [treatment]." *Id.*

In light of the illegibility of this March 16th record, and at Respondent's request in pursuit of settlement discussions (*see* Response at 4, n.4; *see also* ECF No. 32), Petitioner obtained a letter from her chiropractor, dated January 23, 2023. Ex. 45. Petitioner's chiropractor did not transcribe the original record, but instead wrote that on March 16, 2020, Petitioner had complained of "right shoulder pain that had been going on for a month." *Id.* at 1. According to this chiropractor, Petitioner's pain "started after a Hepatitis B vaccine that was administered a month prior to March 16, 2020." *Id.* The chiropractor wrote that he asked Petitioner if anything could have explained her right shoulder pain, and she "stated the only thing that preceded her right shoulder pain was the Hepatitis B vaccine." *Id.*

Petitioner addresses this specific chiropractic visit in her third affidavit. *See* Ex. 46. Petitioner attests that during this visit, she "explained to [the chiropractor] that [she] ha[d] been experiencing right shoulder pain for approximately one month since [she] received a Hepatitis B vaccination on February 14, 2020[,]" and this was "the only thing" that "preceded [her] right shoulder pain." *Id.* ¶ 11. However, according to Petitioner, "[i]nitially," her chiropractor "was skeptical that a shoulder injury could be caused by a vaccination." *See id.*; *see also* Ex. 33 ¶ 8. Instead, the chiropractor asked Petitioner several questions about any physical activities that could have contributed to her pain. Ex. 46 ¶ 11. Petitioner attests that, in response, she reported she "had lifted real estate signs out of her car for open houses" but had not "pounded" them into the ground as the note stated (since the signs were free-standing A frames). *See id.*; *see also* Ex. 47 (a photo of the free-standing signs). Petitioner asserts that "must have been [the chiropractor's] misinterpretation[.]" Ex. 46 ¶ 11.

Petitioner had a visit with a weight loss clinic on March 24, 2020. Ex. 21 at 6. The records do not contain complaints of right shoulder symptoms during this visit. *Id.*

In response to my Order to Show Cause, Petitioner submitted a certified copy of an email she sent to her PCP on April 3, 2020, with the subject line "Hep B Injection & Shoulder Pain." *See* Ex. 50; *see also* Ex. 56 (an affidavit certifying the email exhibit as true and accurate). In the email, Petitioner stated that she "had shoulder pain in the arm that [she] had the Hep B shot that started right after [she] had the injection." Ex. 50 at 1. She described the pain as being in her shoulder and "down through [her] arm" plus numbness and weakness in the arm and hand. *Id.* Petitioner noted that her pain was worse at nighttime and when trying to reach for things with that arm. *Id.* Petitioner informed her PCP that her chiropractic care "didn't do any good," so she had scheduled an orthopedic visit; she wanted to "advise" the PCP of "this situation." *Id.*; Ex. 49 ¶ 11.

Fifty-three days post vaccination, on April 7, 2020, Petitioner saw an orthopedic surgeon reporting right shoulder pain. Ex. 4 at 261. Petitioner complained of "pain on the posterior aspect of her right shoulder and states that the pain radiates down the posterior aspect of her right arm down to her elbow." *Id.* She "believe[d] that this has started after receiving a Hep B vaccine" or "perhaps due to sleep." *Id.* Following a physical examination (showing limited ROM and impingement signs), Petitioner's treater opined that Petitioner's presentation was "suggestive of rotator cuff dysfunction and/or impingement and possibly radiculopathy." *Id.*

In her affidavit drafted following my Order to Show Cause, Petitioner addresses the notation in her April 7th orthopedic records that she thought her pain was "perhaps due to sleep." Ex. 49 ¶ 14. Petitioner attests that she "did not tell [her orthopedist] that

[she] was not sure whether the Hepatitis B injection caused the pain or that it was" due to sleep. *Id.* Rather, she "explained to [the orthopedist] that [her] right shoulder pain was worse at night" and that if she "inadvertently rolled over on [her] right side, [she] would wake up due to right shoulder pain." *Id.* As further support for this explanation, she notes that she attributed her pain to the Hep B vaccine on the intake forms completed at her orthopedist's office on that date. *Id.*

Petitioner also has filed a certified copy of the intake forms she filled out during her April 7, 2020 orthopedic evaluation – which were not previously included in the visit entries for that date. *See* Ex. 51; *see also* Ex. 55 (an affidavit certifying the intake forms exhibit as true and accurate). On the form, Petitioner listed the date of onset as "02/14/2020." Ex. 51 at 3. In the "health history questionnaire" section, Petitioner noted the "date and duration of injury" as "02/14/2020 to current" and that the "Hep B vaccine caused it ([she] believe[d])." *Id.* at 4. In the "accident/injury information form" section (also completed on April 7th), Petitioner wrote that her injury occurred on "February 14, 2020," and that she "believe[d] that it was caused by [the] Hepatitus [sic] B injection." *Id.* at 6.

Petitioner underwent an initial physical therapy ("PT") evaluation for her right shoulder pain on September 5, 2020. Ex. 9 at 21. Petitioner reported that "she had an onset of [right] shoulder pain in Feb[ruary] 2020 . . . after receiving her hepatitis shot." *Id.* The onset date was listed as "02/05/2020." *Id.* She later supplied the certified intake forms for this initial PT evaluation in response to my Order to Show Cause. Ex. 52. This intake form was filled out and dated on September 3, 2020 (two days prior to her first PT visit). *Id.* at 18-19. Petitioner listed the date of her injury as "02/14/2020[,]" and that it was caused by the "Hepatitus [sic] vaccination." *Id.* at 18.

On January 11, 2021, during a visit with her gastroenterologist, Petitioner reported that a Hep B vaccine she received was "given in [the] wrong part of the shoulder (SIRVA)," and that she had been "having pain since 02/2020." Ex. 13 at 20.

Petitioner established care with another PCP on March 30, 2022. Ex. 43 at 6. In describing her history, Petitioner reported that she had a Hep B shot in "[F]eb[ruary] 2020" and "had [right] shoulder pain ever since." *Id.*

Petitioner also has filed a witness declaration from a friend with whom she frequently walks throughout the neighborhood. Ex. 48 ¶¶ 4-5. Petitioner's friend attests that "[i]n early 2020, during one of [their] walks together, [Petitioner] told [the friend] that she had gotten the Hepatitis B vaccine the day before and that her shoulder was really sore." *Id.* ¶ 6. And, "[o]ver the next several days . . . [Petitioner] told [the friend] that her shoulder was still very sore since the vaccination." *Id.* ¶ 7.

6

Additionally, in response to my Order to Show Cause Petitioner submitted an affidavit from her sister (drafted in May 2024). Ex. 53. That individual attests that "[s]ometime in early 2020," Petitioner told her that "she received a shot and ever since the day of the shot her right shoulder has been painful and that she had difficulties sleeping due to pain." *Id.* ¶ 6. She noted that "after a few days of the pain not going away," Petitioner became concerned. *Id.* Petitioner's sister "believe[d]" that Petitioner called her "within a few days of the vaccination." *Id.*

Finally (and also in response to my Order to Show Cause), Petitioner's family friend submitted an affidavit, drafted in May 2024. Ex. 54. This friend recalls that on April 4, 2020, she had dinner with Petitioner and noticed Petitioner "looking uncomfortable as if she was in pain." *Id.* ¶ 6. According to this friend, Petitioner told her that "her shoulder ha[d] been hurting since she received a vaccination." *Id.* This friend was able to recall this specific date of this conversation because she kept a daily journal. *Id.* No other medical record or affidavit evidence regarding the onset of Petitioner's post vaccination shoulder injury has been filed.

## IV.    Finding of Fact Regarding Onset

A petitioner alleging a SIRVA claim must show that she experienced the first symptom or onset within 48 hours of vaccination (42 C.F.R. § 100.3(a)(XIV)(B) and 3(c)(10)(ii) (QAI criteria)).

As stated above, Respondent contends that Petitioner's medical records do not support that the onset of her pain occurred within 48 hours of vaccination. *See,* e.g., Resp. at 12-14. But the totality of the evidence, including the evidence filed in response to my Order to Show Cause (i.e., outstanding certified records), supports a favorable onset finding. In fact, although I cautioned Petitioner that her attestations regarding the onset of pain occurring the day of her vaccination were previously not corroborated by the contemporaneous medical records (ECF No. 47 at 4), Petitioner has supplemented the record with precisely the type of additional documentation and evidence necessary to overcome the critical deficiencies in the record regarding onset that is typically sought following an Order to Show Cause (but usually not received). *See,* e.g., Exs. 50-52, 55-56.

Thus, the aforementioned medical records, coupled with Petitioner's filed affidavits, establish that Petitioner consistently reported to treaters an onset close-in-time

7

to vaccination, that she sought treatment within one-to-two[4] months of the February 14, 2020 vaccination, and that she was experiencing symptoms in the relevant timeframe.

The fact that Petitioner sought treatment within two months (at most) of her vaccination (by April 7, 2020) is in this case partially supportive of Table onset. In other cases, *significantly greater* delays has not undermined an otherwise-preponderantly-established onset showing consistent with the Table. *See,* e.g., *Tenneson v. Sec'y of Health & Hum. Servs.*, No. 16-1664V, 2018 WL 3083140, at *5 (Fed. Cl. Spec. Mstr. Mar. 30, 2018), *mot. for rev. denied,* 142 Fed. Cl. 329 (2019) (finding a 48-hour onset of shoulder pain despite a nearly six-month delay in seeking treatment); *Williams v. Sec'y of Health & Hum. Servs.*, No. 17-830V, 2019 WL 1040410, at *9 (Fed. Cl. Spec. Mstr. Jan. 31, 2019) (noting a delay in seeking treatment for five-and-a-half months because a petitioner underestimated the severity of her shoulder injury). But the delay here is not nearly so long.

At the same time, the fact that Petitioner sought care with her podiatrist two weeks post vaccination (on February 28, 2020) without mentioning shoulder pain (or exhibiting shoulder symptoms on examination) does not detract from her arguments on onset. That visit was with a specialist for unrelated foot issues. Ex. 12 at 3-4. Similarly, her March 24, 2020 visit to a weight loss clinic without mentioning right shoulder complaints does not preclude a finding of Table onset – especially in light of the fact that Petitioner *still* reported and/or sought care for right shoulder pain within approximately ten days of this visit (on April 3 and 7, 2020). Ex. 21 at 6; Ex. 50; Ex. 4 at 261.

In addition, and most importantly, the filed medical record establishes that Petitioner consistently and repeatedly linked her shoulder pain to the subject vaccine – beginning with the April 3, 2020 email report to her PCP, at which time she titled the email "Hep B Injection & Shoulder Pain" and stated that she "had shoulder pain in the arm that [she] had the Hep B shot that started right after [she] had the injection." Ex. 50. Other subsequent medical and/or intake form records describe onset with more particularity, noting that her right shoulder pain began specifically on February 14, 2020. *See,* e.g., Ex. 51 at 3-4, 6 (the April 7, 2020 certified orthopedic intake forms listing the onset date as

---

[4] The date of Petitioner's first encounter for right shoulder pain is rather unclear. For instance, while the record notes from Petitioner's March 16, 2020 chiropractor visit appear to contain a mention of a right upper extremity complaint, the visit notes are mostly illegible; and the letter authored by her chiropractor to clarify these visit notes (and describing reports of pain since the subject vaccination) does not wholly overcome this deficiency – as the letter was drafted nearly three years post vaccination and thus cannot be afforded the same weight as a contemporaneous medical record. Ex. 5 at 5; Ex. 45. I thus have reason to doubt that March 16th (one month post vaccination) was Petitioner's first visit for post vaccination pain. Nonetheless, the April 3, 2020 email to her PCP, with the April 7, 2020 orthopedic visit and intake notes – linking her right shoulder pain to the subject vaccination – provide evidence that Petitioner sought care within two months of vaccination *at the latest.* Ex. 4 at 261; Exs. 50-51, 55-56.

"02/14/2020" and the "date and duration of injury" as "02/14/2020 to current" and that the "Hep B vaccine caused it"); Ex. 52 at 18-19 (the September 3, 2020 certified PT intake forms listing the date of her injury as "02/14/2020[,]" and stating that it was caused by the "Hepatitus [sic] vaccination."). More so, such entries corroborate the ample and consistent contentions made in Petitioner's affidavits that her pain began within 48 hours of vaccination. *See* Exs. 1, 33, 46, 49.

Although some of Petitioner's records suggest an onset beginning at some unspecified time in February 2020, I do not find this evidence tips against a favorable onset determination. *See,* e.g., Ex. 9 at 21 (a September 5, 2020 initial PT evaluation stating onset of right shoulder pain "in Feb[ruary] 2020 . . . after receiving her hepatitis shot")[5]; Ex. 13 at 20 (a January 11, 2021 note stating Petitioner had pain "since 02/2020"); Ex. 43 at 6 (a March 30, 2022 note stating Petitioner had a Hep B shot in "[F]eb[ruary] 2020" and had pain ever since). In fact, Petitioner still related her pain as beginning after her receipt of the vaccine in question. These records are thus fairly consistent with her other specific reports of pain beginning after her subject vaccination discussed above and provide further support for 48-hour onset.

While at least one medical record reflects that Petitioner was equivocal about what could have caused her shoulder injury (e.g., the Hep B vaccination versus sleep) (on April 7, 2020 - Ex. 4 at 261), her layman's speculation as to the cause of her injury is not strong proof on the question of onset. In fact, I credit Petitioner's explanation regarding this discrepancy in the medical records – that she told the treater she thought her pain was from the vaccination, but that her "right shoulder pain was worse at night," and that if she "inadvertently rolled over on [her] right side, [she] would wake up due to right shoulder pain." Ex. 49 ¶ 14. This explanation is especially persuasive when compared to the intake form from the same April 7th orthopedic visit that alleges the vaccine as causal of her shoulder pain. Ex. 51 at 3-4, 6. Petitioner has thus established that onset of her injury occurred within the timeframe required by the Table.

## Conclusion and Scheduling Order

Despite my favorable onset determination, Respondent's remaining objection to a Table SIRVA[6] (not discussed in this Ruling) *could* ultimately require more evaluation. I

---

[5]  While this record contains an incorrect vaccination date (listed as "02/05/2020" – Ex. 9 at 21), it nonetheless provides some support for an onset that occurred close-in-time to the subject vaccination.

[6] Respondent has also argued that Petitioner's symptoms were not limited to the vaccinated shoulder, as she reported symptoms into part of her arm and into her elbow/hand, and that there are other conditions or abnormalities present (carrying signs, radiculopathy, cervical disc bulge) that could explain her post-vaccination symptoms independent of the subject vaccination. Respondent's Report at 11 (citing Ex. 4 at 14, 261, 263; Ex. 5 at 5).

thus *strongly* encourage the parties to promptly attempt an informal resolution of this claim before expending any further litigative resources on the case. If at any time informal resolution appears unlikely, given that the claim has been pending in SPU for well over one year (having been assigned in November 2021), the parties should propose a method for moving forward, i.e., with a proposed briefing schedule regarding the remaining disputed issues or otherwise stating how they wish to proceed.

Accordingly, **by no later than Thursday, September 11, 2025**, the parties shall file a joint status report confirming the date on which Petitioner conveyed, or intends to convey, a reasonable settlement demand and supporting documentation for Respondent's consideration.

**IT IS SO ORDERED.**

**s/Brian H. Corcoran**
Brian H. Corcoran
Chief Special Master